UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


TRACY R. HARRIS,

       Plaintiff                     Civil Action No. 05-71179

v.                                HON.  JOHN CORBETT O'MEARA
                                 U.S. District Judge
                                 HON. R.  STEVEN WHALEN
COMMISSIONER OF SOCIAL         U.S. Magistrate Judge
SECURITY,

       Defendant.

_____/

## REPORT AND RECOMMENDATION

      Plaintiff Tracy R. Harris brings this action pursuant to 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for disability and disability insurance benefits under the Social Security Act (Tr. 48-50). Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). I recommend that Defendant's Motion for Summary Judgment be DENIED, and Plaintiff's Motion for Summary Judgment GRANTED, remanding the case for further administrative hearing.


## PROCEDURAL HISTORY

-1-

On April 8, 2002, Plaintiff filed an application for Disability Insurance Benefits (DIB), alleging an onset of disability date of May 1, 2000 (Tr. 48-50). After denial of her initial claim, Plaintiff filed a timely request for an administrative hearing, conducted on January 22, 2004 in Oak Park, Michigan before Administrative Law Judge (ALJ) Henry Perez. Plaintiff, represented by attorney Lisa Welton, testified. (Tr. 202-229). Michael Rosko, acting as Vocational Expert (VE), also testified (Tr. 228-233). On April 28, 2004, ALJ Perez found that although Plaintiff was unable to perform any of her past work, she retained the capacity to perform a significant number of jobs in the national economy (Tr. 26). On January 28, 2005 the Appeals Council denied review (Tr. 5-7). Plaintiff filed for judicial review of the final decision on March 29, 2005.

## BACKGROUND FACTS

Plaintiff, born August 31, 1962, was age forty-one when the ALJ issued his decision (Tr. 48). She attained a GED and attended one year of college (Tr. 60). She worked previously as a dietary director at a nursing home and at various restaurant jobs (Tr. 55). Plaintiff alleges an onset date of May 31, 2000 due to chronic pain as a result of Fibromyalgia (Tr. 54).[1]

### A.    Plaintiff's Testimony

_____

[1]Plaintiff's disability application states that she first experienced disability on May 1, 2000 (Tr. 48), however, another portion of her submissions to the SSA alleges a May 31, 2000 onset date (Tr. 54).

Plaintiff, 41, a resident of Detroit, Michigan, stated that she lived with her husband and two daughters in a two-story single family home (Tr. 203). She testified that she had obtained a GED and later received a certification for dietary management (Tr. 203). She indicated that her certification had since expired, adding that she last worked in May, 2000, holding the position of assistant director of the dietary department at a nursing home (Tr. 203, 205).

Plaintiff reported that she stopped working due to leg and lower back pain which created difficulty standing, sitting, and walking (Tr. 204). She indicated that her nursing home position required her to cook; prepare and serve food; wash dishes; answer the phone; and chart the residents' diets (Tr. 205-206). She estimated that her job required her to lift up to fifty pounds occasionally and twenty to thirty pounds frequently and that she routinely stood or walked for approximately four to six hours in an eight-hour shift (Tr. 206-207).

Plaintiff testified that she was given a diagnosis of severe Fibromyalgia which created constant pain (Tr. 205). In addition to muscle pain, she reported difficulty sleeping, poor concentration, panic attacks, depression, and vision problems (Tr. 208-209). She opined that vision problems, which she attributed to Fibromyalgia, would prevent her from performing her former job, which required her to chart information (Tr. 212). She estimated that she suffered from panic attacks three to four times a week, adding that she sometimes experienced panic attacks which lasted more than a day (Tr. 213).

-3-

Plaintiff testified that since becoming disabled she could not sit in one position for more than five minutes, walk for more than three minutes, or lift more than five pounds (Tr. 215-216). She reported difficulty performing even light housekeeping tasks, stating that standing for the amount of time necessary to wash dishes caused her legs to swell and back pain (Tr. 216).

Plaintiff reported that on a typical day, she would take her daughter to school, go to the gym, then go home, adding that she no longer attended church regularly (Tr. 218). She stated that she shopped only rarely and had cooked only a handful of times since becoming disabled (Tr. 219). She reported that exercising helped her mental state, but indicated her sexual interest had decreased, noting that since taking Fibromyalgia medication, her weight had increased from 138 to 200 pounds (Tr. 219). She rated her pain on a scale of one to ten as "ten plus" (Tr. 220). She reported that her pain-management physician had prescribed Neurontin and increased her anti-depressant dosage (Tr. 221). She indicated that she had seen a psychologist briefly, but was forced to discontinue treatment for financial reasons (Tr. 222). She testified that she currently took Vicodin, Flexeril, Xanax and Zoloft (Tr. 222). She reported that her medication caused intermittent constipation and concentration lapses (Tr. 223). She reported additionally that she experienced regular hand cramping and numbness (Tr. 224). She estimated that she spent fourteen of her eighteen waking hours lying down, adding that she had discontinued many former activities such as singing in the church choir and walking for exercise (Tr. 225, 228).

-4-

### B.     Medical Evidence

In July, 2000, Plaintiff sought treatment for back pain as well as numbness and tingling in her feet and toes (Tr. 121).  Dr. Dryer, observing tightened hamstrings, prescribed manual lumbar traction and followup with moist heat and electrical stimulation, also recommending self-traction for home use (Tr. 121).  Nerve conduction studies performed the same month showed normal results (Tr. 123).

In October, 2000, Plaintiff sought treatment from Deborah Adamcheck, P.A.C., complaining of discomfort from Fibromyalgia (Tr. 120).  Plaintiff reported that Vioxx and Flexeril did not control her symptoms (Tr. 120).  Adamcheck increased her dosage of Flexeril (Tr. 120).  The next month, Adamcheck noted that Plaintiff experienced partial relief from walking daily, adding that she complained of disrupted sleep and "some mild depression" (Tr. 108).  Also in November, 2000, Luis Torregrosa, M.D. found upon examining Plaintiff that she met the diagnostic criteria for Fibromyalgia as dictated by the American College of Rheumatorology (Tr. 113).  Dr. Torresgrosa prescribed physical therapy, and considered referring her to "Behavioral Services" for further evaluation (Tr. 113).

In March, 2002 Adamcheck noted that Plaintiff continued to complain of symptoms of Fibromyalgia, but did not display joint swelling, erythema, or joint derangement (Tr. 106).  Plaintiff, stating that she could not afford health insurance, and reporting that depression and anxiety prevented her from regular church attendance and walking activities, indicated that she had discontinued taking Effexor

-5-

2:05-cv-71179-JCO-RSW   Doc # 22   Filed 03/13/06   Pg 6 of 24   Pg ID 331

(Tr. 106).

In August, 2002, Psychiatrist A. Kumar, M.D. examined Plaintiff on behalf of Disability Determination Service (DDS) (Tr. 124). Exam notes show that Plaintiff reported crying spells, childhood sexual abuse, and continued discomfort from Fibromyalgia (Tr. 124). Plaintiff reported good relations with her family, but indicated a preference for being alone (Tr. 125). She stated that with proper resources she could take care of her basic needs (Tr. 125). Dr. Kumar found Plaintiff in touch with reality, but found further that she experienced low self-esteem (Tr. 125). He diagnosed Plaintiff with moderate to severe depression and post traumatic stress disorder with a "guarded" prognosis (Tr. 126). He assigned Plaintiff a GAF of 44[2] (Tr. 126). A Psychiatric Review Technique performed the same month found that Plaintiff experienced moderate restrictions in daily activities, as well as moderate difficulty maintaining social functioning; and concentration persistence, or pace (Tr. 90). A Mental Residual Functional Capacity Assessment performed at the same time showed that Plaintiff's ability to understand and remember detailed instructions, along with her ability to maintain attention and concentration for extended periods, was moderately limited (Tr. 94). The mental assessment concluded that Plaintiff retained the capacity to perform simple work activities on a sustained basis and would be able

---

[2]A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 34 (*DSM-IV-TR* ) (4th ed.2000).

-6-

to function in a low stress work environment (Tr. 96).

Also in August, 2002, L. Patel, M.D. examined Plaintiff on behalf of DDS (Tr. 127-130). Plaintiff reported that she currently took Vicodin and Flexeril, stating that she suffered from knee, elbow, and shoulder pain, along with knee and foot swelling due to Fibromyalgia (Tr. 127). She indicated that she could function independently on good days, but remained in bed on bad days (Tr. 127). Dr. Patel noted that Plaintiff could dress, button clothing, and perform overhead maneuvers without difficulty and retained a normal ability to push and pull consistent with her age and weight (Tr. 130). He observed that she walked with a normal gait pattern and could sit and stand, adding that her medical history indicated that she was unable to bend, stoop, or carry (Tr. 130).

In September, 2002. a Residual Functional Capacity Assessment found that Plaintiff retained the ability to lift twenty pounds occasionally and up to ten pounds frequently (Tr. 99). The report found further that she could stand or walk for at least two hours in an eight hour work day; sit for six hours; and retained an unlimited ability to push and pull (Tr. 99). Plaintiff was noted to suffer from both depression and Fibromyalgia, which created tender points on ankles, knees, elbows, and shoulders (Tr. 99). The report further noted that Plaintiff retained the ability to climb, balance, stoop, and crouch only occasionally, and could perform kneeling and crawling frequently, but not constantly (Tr. 100).

In October, 2002, Plaintiff sought treatment for depression and Fibromyalgia

-7-

from Vikas Shah, M.D.(Tr. 141). Dr. Shah's notes indicate that Plaintiff, crying during the examination, reported generalized full body tenderness (Tr. 141). Dr. Shah recommended mental health counseling, along with a Neurontin (Tr. 141). He concluded that trigger point injections were not an option due to Plaintiff's generalized tenderness, noting that due to "eralgesia all over the body," he would have difficulty finding a single trigger point (Tr. 141). The next month, Internist Richard Dryer, M.D. examined Plaintiff, noting that she cried throughout the exam due to muscle tenderness and "some element of depression." He recorded that the bulk of Plaintiff's examination was spent discussing potential Fibromyalgia treatment (Tr. 138-139).

In January, 2003, P.A. Adamcheck, noted that Plaintiff reported continued, unabating pain from Fibromyalgia despite medication and attempts to exercise (Tr. 146). Plaintiff also indicated that she experienced low back pain independent of symptoms of Fibromyalgia (Tr. 146). Adamcheck, encouraging Plaintiff to lose weight, observed that she had gained "significant weight" since her last appointment, recording that she weighed 209 pounds (Tr. 146-147).

In March, 2003, Rachel Wolf-Silver, M.D. examined Plaintiff, noting that Plaintiff's severe Fibromyalgia remained stable (Tr. 166). Plaintiff reported that she continued to exercise (Tr. 166). Dr. Wolf-Silver noted that Neurontin helped relieve Plaintiff's symptoms, adding that she worked with a trainer to improve her condition and drank Chinese tea (Tr. 167). Plaintiff reported difficulty sleeping and poor

-8-

concentration (Tr. 167). The same month, Dr. Wolf-Silver completed a questionnaire pertaining to Plaintiff's remaining capacity for work (Tr. 134-136). Dr. Wolf-Silver, noting that Plaintiff met the American Rheumatological criteria for Fibromyalgia, reported that Plaintiff also experienced nonrestorative sleep, chronic fatigue, anxiety, and panic attacks (Tr. 134). She found that Plaintiff's degree of impairment would have an "extreme" effect on her ability to work, adding that Plaintiff experienced trouble concentrating and multi-tasking (Tr. 135). Deeming Plaintiff's prognosis "guarded," she noted that "emotional factors" contributed to Plaintiff's work limitations (Tr. 135). She concluded that Plaintiff could stand for a maximum of one hour, sit upright for only one hour, and retained the ability to lift less than ten pounds on an occasional basis and less than five pounds on a frequent basis (Tr. 135).

### C.    Vocational Expert Testimony

VE Michael Rusko placed Plaintiff's former work at the medium level of exertion, classifying her jobs as a dietary director, clinical supervisor, and cook as semi-skilled and her work as a dietary aide as unskilled (Tr. 230). He indicated that Plaintiff's cooking skills were transferable only to other jobs at the medium exertional level, estimating that approximately 10,000 of such jobs were available in the State of Michigan (Tr. 230). The ALJ then posed the following question to the VE:

> "Taking Claimant's age, education and work experience into account, assume
> that such a person has an exertion limitation of lifting 20 pounds occasionally
> and 10 pounds frequently and pose further limitations of jobs that would
> provide for sitting six hours; standing, walking two hours with occasional
> climbing, balancing, stooping, crouching, kneeling and crawling; jobs that

-9-

would provide for routine production and stress; simple job assignments; occasional contact with the public.  And if we put that individual at the semi-skill level, could such a person be expected to perform the Claimant's past relevant work?"

(Tr. 231).  The VE stated that given the above limitations, Plaintiff could not perform her past work, but could perform various entry level positions at the light exertional level, including the work of an assembler, packager, sorter, or visual inspector, finding that 6,000 of such jobs existed in the region and 12,000 throughout the state (Tr. 231). He added that if Plaintiff's testimony pertaining to her *exertional* limitations were fully credited, she could still perform a range of entry-level sedentary jobs "involving simple assembly, packaging, sorting and visual inspection," stating that approximately 5,000 of such jobs existed at the regional level and 10,000 at the state level (Tr. 232). He testified that if he took into consideration all of the non-exertional limitations alleged by Plaintiff she would be unable to perform any job, due to fibromyalgia, severe depression, and vision problems (Tr. 232-233).    The VE testified that his conclusions pertaining to standing and sitting requirements were based on his own experience in job placement, stating that the Dictionary of Occupational Titles (DOT) was silent regarding alternating standing and sitting job demands (Tr. 233).

**D.     The ALJ's Decision**

Based on Plaintiff's April 8, 2002 application, ALJ Perez held that Plaintiff was not disabled within the meaning of the Social Security Act (Tr. 26).  Citing Plaintiff's medical records, he found that Plaintiff experienced a muscle/ligament disorder and

-10-

fascia; fibromyalgia; affective disorder; and an anxiety related disorder (Tr. 16). The ALJ held that these impairments were considered severe based on the requirements of 20 C.F.R. § 404.1521, but found that they did not meet or medically equal one of the impairments found in Part 404 Appendix 1 Subpart P, Regulations No. 4, noting that none of Plaintiff's treating or examining physicians had made findings, "either singularly or in combination" indicating otherwise (Tr. 21).

The ALJ found that while Plaintiff was unable to perform her past work, she retained the residual functional capacity (RFC) to perform the exertional demands of light work (Tr. 26).

He concluded although Plaintiff's non-exertional limitations prevented her from performing a full range of light work, Plaintiff could perform a significant number of jobs in the national economy, citing work as an assembler, packer, sorter, and visual inspector, finding the occurrence of approximately 6,000 of such jobs in the regional economy (Tr. 25).

The ALJ found Plaintiff's allegations of limitations "not fully credible," observing that although she experienced "symptom-producing medical problems . . . she exaggerates the symptoms and functional limitations caused by her condition" (Tr. 23). He noted that a Psychiatric Review Technique completed in August, 2002 showed that Plaintiff did not experience more than moderate limitations in daily living; social functioning; or concentration, persistence, or pace (Tr. 23).

### STANDARD OF REVIEW

-11-

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.

§423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS[3]

### A.    Credibility

Plaintiff argues first that the ALJ's credibility assessment of her allegations of pain reflects a faulty analysis of the record. *Plaintiff's Brief* at 13. Citing *Duncan v. Secretary of Health and Human Services,* 801 F.2d 847, 853 (6th Cir. 1986), she

---

[3]In addition to the arguments for remand discussed *infra*, Plaintiff alleges that contrary to the requirements of SSR 02-1p,  the ALJ failed to consider the impact of her obesity when he composed the RFC. *Plaintiff's Brief* at 18-19.   However, a remand cannot be granted on this basis.  Although Plaintiff's health care providers noted that she experienced obesity, none found that obesity impaired her work abilities.  Even assuming, *arguendo*, that the ALJ should have included obesity among the Step Two impairments, omission of an explicit finding of a Step Two impairment does not in and of itself require remand.  *Street v. Barnhart* 340 F.Supp.2d 1289 (2004), 1293 -1294 (M.D.Ala.,2004); *Moran v. Commissioner of Social Security* 2003 WL 22002432, 2 (E.D.Mich.,2003); *Leeper v. Sullivan* 1990 WL 77874, 2 (N.D.Ill.1990).

maintains that having established the underlying medical condition of Fibromyalgia, the evidence of record also supports her alleged degree of limitation. *Brief* at 13-15. She contends that the ALJ's determination improperly discredited her complaints of debilitating pain. *Brief* at 14.

*Social Security Ruling* (SSR) 96-7p states that it is not sufficient for the ALJ to make a single, conclusory statement that the individual's allegations have been considered or that the allegations are or are not credible. *Id*, 1996 WL 362209, at 34484. The ALJ's decision must be based on specific reasons for the findings of credibility. *Id*. These reasons must be supported by substantial evidence in the record. *Howard v. Commissioner of Social Security,* 276 F.3d 235, 242 (6th Cir. 2002); *Heston v. Commissioner of Social Security,* 245 F.3d 528, 536 (6th Cir. 2001); *Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994).

Likewise, the ALJ's credibility determination is guided by SSR 96-7p which also describes a two-step process for evaluating symptoms. *See Duncan, supra*. "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment...that can be shown by medically acceptable clinical and laboratory diagnostic techniques . . ." *Id*. Second, SSR 96-7p mandates that:

> "once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limited effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated

-14-

by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." *Id.*

C.F.R. §404.1529(c)(3) lists the factors to be considered in making a credibility determination, including daily activities, "precipitating and aggravating factors," treatment received for relief of symptoms, and additional considerations relevant to functional limitations. 20 C.F.R. § 404.1529(c)(3).

As a general rule, the courts cede enormous latitude to the ALJ's credibility determinations. *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th Cir. 1993). In general, the ALJ's finding is entitled to deference by the reviewing court. *Richardson, supra,* 402 U.S. at 401. In reviewing the findings of the ALJ, the evidence must be reviewed as a totality, examining the record as a whole. *Mowery  v. Heckler,* 771 F.2d 966, 970 (6th Cir.  1985).

Although Plaintiff's diagnosis of Fibromyalgia satisfies the first step of the *Duncan* test, substantial evidence, properly culled from the record and discussed at length in the administrative decision, supports the ALJ's  rejection of the type and severity of symptoms alleged by Plaintiff, thus failing the second portion of the same test. While not disputing that Plaintiff experienced Fibromyalgia, the ALJ found that she "exaggerates the symptoms and functional limitations caused by her condition," noting that a  prognosis is usually favorable "with a comprehensive supportive program" (Tr. 23). He observed that Plaintiff continued to drive, take her daughter to school, and go to the gym (Tr. 22).

Further, in conformance with SSR 96-7p, the ALJ supported his credibility

-15-

determination with evidence drawn from the record.    Although Plaintiff testified that discomfort obliged her to spend fourteen of her waking hours each day lying down, Dr. Patel's August, 2002 examination indicated that she retained ability to push, pull, walk, and reach overhead consistent with her age and weight (Tr. 130).    Likewise, the Residual Functional Capacity Assessment performed on the basis of treating and examining physicians' records concluded that despite Plaintiff's diagnosis of Fibromyalgia and depression, that she could stand or walk for six hours in an eight hour work day, sit for six hours, and perform the lifting requirements for light work (Tr. 99).[4]  The ALJ's credibility determination, properly articulated and supported by record evidence,  does not contain grounds for a remand.[5]

**B.        Treating and Examining Physicians**

Plaintiff argues next that the ALJ mischaracterized the exertional limitations properly found by  Dr. Wolf-Silver.  *Plaintiff's Brief* at 16, *referencing*  (Tr. 134-136).  She also maintains that the ALJ erred by failing to adopt  Dr. Kumar's GAF assessment of 44,[6] citing *Wilson v. Commissioner of Social Security* 378 F. 3d 541 (6th Cir. 2004) in support of the proposition that a medical opinion which supports a finding of disability is "entitled to

---

[4]20 CFR 404.1567(b).

[5]However, as discussed in footnote 7, independent of the ALJ's adequately stated credibility determination, pursuant to SSR 96-7p, he improperly inferred that Plaintiff's failure to seek mental health treatment belied her allegations of depression.

[6]See footnote 2.

-16-

controlling weight, or substantial deference." *Plaintiff's Brief* at 15-19.

Generally, "[i]n determining the question of substantiality of evidence, the reports of physicians who have treated a patient over a period of time . . . are given greater weight than . . . physicians employed and paid by the government . . ." *Allen v. Califano*, 613F.2d 139, 145 (6th Cir. 1980); 20 C.F.R. §404.1527(d) (evaluating evidence from treating sources). See *Jones v. Secretary of Health and Human Services*, 945 F.2d 1365, 1370 (footnote 7) (6th Cir. 1991) ("[I]t is well-settled in this circuit that treating physicians' opinions, based on objective evidence, should be accorded significant weight. If uncontradicted, the physicians' opinions are entitled to complete deference" ). However, the deference accorded the treating physician is only appropriate when the examining physician's report is both "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2).

In *Wilson, supra,* 378 F.3d 541, 544 (6th Cir. 2004) the court held that if controlling weight could not be accorded to the treating physician's opinion, the ALJ must consider various factors in allotting weight such as "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source" and must "give good reasons" for not giving weight to a treating physician in the context of a disability determination." *Id.*; 20 C.F.R. §404.1527(d)(2) (2004).

First, pursuant to *Wilson, supra,* Dr. Wolf-Silver's opinion cannot be accorded

-17-

controlling weight. As noted by the ALJ,  her findings which conclude that Plaintiff could not stand or sit upright for more than one hour are contradicted by Dr. Patel's August, 2002 observations and a Residual Functional Capacity Assessment performed the following month which noted that Plaintiff could walk with a normal gait and sit or stand for approximately six hours in an eight hour workday.  More obviously, the ALJ was permitted to reject Dr. Wolf-Silver's opinion in light of the fact that she  appears to have examined Plaintiff only once  (Tr. 135).  Although Plaintiff maintains that portions of Dr. Wolf-Silver's findings, which state that her condition would have an "extreme" effect on her work abilities, comport with other portions of her medical history, the ALJ was nonetheless not required to adopt Wolf-Silver's conclusions which were based on a single examination.

Likewise, the ALJ supported his decision to adopt only a portion of Dr. Kumar's findings by citing internal inconsistencies in the psychiatric evaluation.  He noted that although Dr. Kumar assigned Plaintiff a GAF of 44, indicating a serious impairment with social and occupational functioning,  the score was "not totally consistent with the narrative report, " which noted that Plaintiff got along with her family; could take care of her food, clothing, and personal needs; and exhibited good judgment (Tr. 18).

## C.  Vocational Expert Testimony

Plaintiff also maintains that that remand is appropriate because the hypothetical question posed to the VE did not include all of her non-exertional limitations, thus tainting the VE's findings that she could perform the work of an assembler, packager, sorter, or visual

inspector. *Plaintiff's Brief* at 19-20. Citing *Varley v. Secretary of Health and Human Services,* 820 F.2d 777 (6th Cir. 1987), Plaintiff asserts that the hypothetical question did not accurately portray her impairments with respect to concentration, persistence and pace. *Brief* at 19.

Pursuant to *Varley, supra,* 820 F.2d at 779, a hypothetical question constitutes substantial evidence only if it accurately portrays the individual's physical and mental impairments. More recently, in *Webb v. Commissioner of Social Sec.* 368 F.3d 629 (6th Cir. 2004), the court rejected the proposition that an ALJ is required to list all of a claimant's maladies verbatim in the hypothetical question. Nonetheless, the *Webb* court acknowledged that "[t]he hypothetical question . . . should include an accurate portrayal of [a claimant's] individual physical and mental impairments." (internal citations omitted) *Id.* at 632; *quoting Varley, supra,* 820 F.2d at 779. *See also Smith v. Halter,* 307 F.3d 377, 379 (6th Cir. 2001).

Generally, a failure to account for pacing deficiencies constitutes reversible error. In *Bankston v. Commissioner,* 127 F. Supp. 2d 820, 826 (E.D. Mich. 2000), the Court found that "a mental deficiency occurring 'often' may not be consistent with substantial gainful employment." Likewise, "moderate" deficiencies, which also mark the midpoint of a five-point scale, suggest substantial limitations which should be acknowledged in the hypothetical question. The fact that a job is simple and routine has nothing to do with whether or to what degree a worker's moderate deficiencies in concentration will affect the timely completion of that job, and indeed, courts have found such descriptions insufficient to address

-19-

deficiencies in pace. *See, e.g., Newton v. Chater,* 92 F.3d 688, 695 (8th Cir. 1996); *McGuire v. Apfel,* 1999 WL 426035, 15 (D. Or. 1999). Nor does the qualifier "low stress" effectively "capture the concrete consequences" of Plaintiff's limitations in pace. *Roe v. Chater,* 92 F.3d 672, 676-77 (8th Cir. 1996). Stress does not necessarily correlate with pace and the ability to complete tasks in a timely manner over an eight-hour workday.

The ALJ cites the conclusions of an August, 2002 Psychiatric Review Technique to illustrate that Plaintiff did not experience *marked* or *extreme* functional limitations (Tr. 23). However, in composing the hypothetical question, he neglected to include the same report's findings that Plaintiff suffered from a number of *moderate* functional limitations, including deficiencies in concentration, persistence, or pace that would reasonably be expected to limit her work capacities. Notably, three of the four of the jobs the VE found Plaintiff could perform, based on the hypothetical question  (assembler, packager, and sorter),  require the worker to maintain a consistent work pace to fulfill production quotas.

Moreover, although the Psychiatric Review Technique also concluded that Plaintiff's work should be limited to *low* stress  environments (Tr. 96) (which in and of itself would not be adequate to account for Plaintiff's non-exertional limitations pursuant to *Roe, supra*), the ALJ ignored this portion of the report, instead posing a hypothetical question allowing for *routine* stress (Tr. 231). Even assuming that substantial evidence supported the ALJ's decision to adopt only a portion of the Psychiatric Review Technique, his hypothetical question, which permits Plaintiff to work in an atmosphere of *routine* stress*, performing

-20-

*routine* production work, thus placing only mild restrictions on Plaintiff's work activities,

stand at odds with the rest of his opinion which explicitly acknowledges that "[a]ffective and

anxiety related disorders have been demonstrated in the record," and  identical Step Two

findings.  While in any case, pursuant to *Webb,* the ALJ was not required to explicitly list

Plaintiff's specific non-exertional *diagnoses* in his hypothetical question, his failure include

any non-exertional *limitations* flowing from those conditions,  beyond "routine production

and stress; simple job assignments; [and] occasional contact with the public" constitutes

reversible error.[7]    Because the hypothetical question did not fully encompass Plaintiff's

limitations, the ALJ's decision was not supported by substantial evidence.  *Varley, supra.*

     The final question is whether to remand for further administrative proceedings and

findings or to remand for an award of benefits using Plaintiff's disability onset date for

---

[7]

          The ALJ's errors are not limited to omission of the effects of her anxiety and affective
disorders.  Although not raised by Plaintiff, the ALJ's failure to include *depression* in the
Step Two impairments and its effects at Step Five of his determination appears to stand at
odds with the great weight of evidence.  Almost all of Plaintiff's care providers either
medicated her for depression or at least noted the diagnosis.  The ALJ's sole reason for
declining to find that she was depressed was that the "[medical] assessments have not
included any detailed psychiatric/psychological reports, testing or other objective clinical
findings" (Tr. 20).  However,  Plaintiff's lack of formal mental health treatment appears to
be attributable to her financial difficulties, also referenced throughout the file.  SSR 96-7p,
at 7-8 states in part that

          "the adjudicator must not draw any inferences about an individual's symptoms
          and their functional effects from a failure to seek or pursue regular medical
          treatment without first considering any explanations that the individual may
          provide, or other information in the case record, that may explain infrequent
          or irregular medical visits or failure to seek medical treatment." *Id.*

calculating past due benefits. In *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171, 176 (6th Cir. 1994), and *Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994), the courts held that it is appropriate to remand for an award of benefits when "all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Id.* This entitlement is established if "the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Faucher,* 17 F.3d at 176 (citing *Mowery v. Heckler*, 771 F.2d rectification, 973 (6th Cir. 1985)). The errors in the administrative decision, while critical, do not suggest that Plaintiff is automatically entitled to benefits. Thus, I find that pursuant to *Faucher,* this case should be remanded for further proceedings consistent with this Report and Recommendation.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be DENIED, and that Plaintiff's Motion for Summary Judgment be GRANTED, remanding this case for further administrative proceedings consistent with this Report and Recommendation.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v.*

-22-

*Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: March 13, 2006

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on March 13, 2006.

-23-

s/Susan Jefferson
Case Manager